OPINION
{¶ 1} Plaintiff-appellant Tradesmen International, Inc. appeals from the July 18, 2002, Judgment Entry of the Stark County Court of Common Pleas which held that Massillon Codified Ordinance Chapter 1313 was constitutional.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Plaintiff-appellant Tradesmen International, Inc. [hereinafter Tradesmen] is an Ohio corporation, licensed to do business in Ohio. Tradesmen is in the business of leasing employees, who are skilled tradespersons, to construction contractors. Tradesmen leases skilled tradespersons who practice many different trades, including but not limited to, electrical work. These leased employees have various levels of experience in their fields and include helpers, apprentices, journeymen and leadmen. Tradesmen's clients are contractors who are licensed in various trades. Tradesmen is paid a fee based upon the number of hours worked by the leased employee. Tradesmen then pays the leased employee, administers all payroll functions and withholdings, and provides for workers compensation coverage and employee benefit programs.
 {¶ 3} This action was instituted on August 28, 2001, when Tradesmen filed a verified complaint in the Stark County Court of Common Pleas. The defendants named were the City of Massillon, the Mayor of Massillon, Massillon City Council Members, the City of Massillon's Chief Building Official and the City of Massillon's Electrical Safety Inspector [hereinafter City of Massillon]. In the verified complaint, Tradesmen sought a declaratory judgment finding that Massillon Codified Ordinances Chapter 1313 [hereinafter Massillon Electrical Code] was unconstitutional and void. Tradesmen also sought a permanent injunction preventing the City of Massillon from pursuing any actions or steps to enforce Massillon's Electrical Code with respect to Tradesmen's leasing of employees to licensed electrical contractors within the City of Massillon.
 {¶ 4} Tradesmen and the City of Massillon agreed that the action would be decided upon briefs and a stipulated record. Subsequent to the filing of briefs and a stipulated record with the trial court, the trial court decided the matter by Judgment Entry filed July 18, 2002. In that Judgment Entry, the trial court held that Massillon Codified Ordinance Chapter 1313 was constitutional.
 {¶ 5} It is from the July 18, 2002, Judgment Entry that Tradesmen appeals, raising the following three assignments of error:
 {¶ 6} "I. The trial court erred by failing to recognize the unconstitutionality of the Massillon Electrical Code based on the conflict between it and the General Laws of Ohio.
 {¶ 7} "II. The trial court erred by failing to recognize that the Massillon Electrical Code violates tradesmen's substantive due process rights under the Ohio and United States Constitutions.
 {¶ 8} "III. The trial court erred by failing to recognize the Unconstitutionality of the Massillon Electrical Code based on its selective enforcement against tradesmen and not others who also supply tradespersons."
 I {¶ 9} In the first assignment of error, Tradesmen argues that the current Massillon Electrical Code conflicts with the general laws of Ohio, in violation of Article XVIII, Section 3 of the Ohio Constitution. We agree, in part.
 {¶ 10} Article XVIII, Section 3 of the Ohio Constitution gives municipalities their powers of home rule. Article XVIII, Section 3 provides as follows: "Municipalities shall have the authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Ohio Supreme Court has established the following three-part test to determine whether a municipal ordinance must yield to the provisions of a state statute: "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." Canton v. State of Ohio,95 Ohio St.3d 149, 151, 2002-Ohio-2005, 766 N.E.2d 963 (citing OhioAssn. of Private Detective Agencies, Inc. v. N. Olmsted (1992),65 Ohio St.3d 242, 244-245, 602 N.E.2d 1147, and Auxter v. Toledo
(1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920). "An ordinance conflicts with the general law if it permits or licenses that which the statute forbids and prohibits, and vice versa." State v. Burnett,93 Ohio St.3d 419, 2001-Ohio-1581, 755 N.E.2d 857.
 {¶ 11} In this case, the City of Massillon concedes that the Massillon Electrical Code is an exercise of police power and that the state statutes in question, R.C. Chapter 4740 and R.C. 715.27, are general laws. Therefore, this court will not address those issues. The question remains, however, whether the Massillon Electrical Code is in conflict with the general laws.
 {¶ 12} We must begin by observing that all legislation is strongly presumed to be constitutional. See State v. Dorso (1983), 4 Ohio St.3d 60,61, 446 N.E.2d 449, 450-451; State v. Smith (1997), 80 Ohio St.3d 89,99, 684 N.E.2d 668, 681. Any doubts regarding the validity of a legislative enactment should be resolved in favor of the enactment. Statev. Gill (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200, 1201. Furthermore, courts must apply all pertinent rules of construction and presumptions to uphold the constitutionality of a statute or ordinance.Hausman v. Dayton (1995), 73 Ohio St.3d 671, 653 N.E.2d 1190; State v.Dorso, 4 Ohio St.3d 60 at 61.
 {¶ 13} Tradesmen first argues that the definition of "electrical contractor" in the Massillon Electrical Code directly conflicts with the definition of "electrical contractor" found in R.C. 4740.01(D). Next, Tradesmen contends that the Massillon Electrical Code's administrative requirement that an electrical contractor "directly employ" it workers, defined as being "on the payroll of" the electrical contractor, conflicts with R.C. 715.27. Last, Tradesmen asserts that the Massillon Municipal Code conflicts with the general laws of Ohio when the Electrical Code purported to create joint and several liability between the lessor and lessee of the tradespersons.
 {¶ 14} The trial court found that the challenged portions of the Massillon Municipal Code were permissible exercises of police power pursuant to R.C. 4740.12(A). However, we find that the trial court's reliance on R.C. 4720.12(A) was misplaced.
 {¶ 15} Revised Code 4740.12(A) states as follows: "Nothing in this chapter shall be construed to limit the operation of any statute or rule of this state or any ordinance or rule of any political subdivision, district, or agency of the state that: (A) Regulates the installation, repair, maintenance, or alteration of plumbing systems, electrical systems, heating, ventilating, and air conditioning systems, or refrigeration systems. . . ." Thus, a municipal corporation has some authority to regulate how electrical work is done. However, as will be discussed, we find the Massillon Electrical Code attempted to regulate who can do the electrical work and in so doing, created unconstitutional conflicts with the general laws of Ohio.
 {¶ 16} We find the first two issues raised by Tradesmen are most readily resolved by reviewing the Massillon Electrical Code as it affects electrical contractors licensed by the State of Ohio. The Ohio Legislature amended R.C. Chapter 4740 to provide for statewide licensing to avoid requiring contractors to obtain licenses in every municipality in Ohio. Thus, the Ohio Legislature amended the Revised Code to permit an electrical contractor to obtain an electrical contractor's license from the Ohio Construction Industry Examining Board. Such a license permits the electrical contractor to perform electrical work within any municipality, as long as the electrical contractor complies with any local requirements of the municipality involved. However, the requirements that a municipality may impose are limited. Revised Code715.27(C) states the following: "For a specialty contractor[1] who holds a valid and unexpired license issued pursuant to Chapter 4740. of the Revised Code, before that specialty contractor may engage in the type of contracting for which the license is held within the municipal corporation, a municipal corporation may require the contractor to register with the municipal corporation and may impose a fee, provided that the fee is the same for all specialty contractors who wish to engage in that type of contracting, and may require a bond and proof of all of the following:
 {¶ 17} "(1) Insurance pursuant to division (B)(4) of section4740.06 of the Revised Code;
 {¶ 18} "(2) Compliance with Chapters 4121. and 4123. of the Revised Code;
 {¶ 19} "(3) Registration with the tax department of the municipal corporation.
 {¶ 20} "If a municipal corporation requires registration, imposes such a fee, or requires a bond or proof of the items listed in divisions (C)(1), (2), and (3) of this section, the municipal corporationimmediately shall permit a contractor who presents proof of holding avalid and unexpired license issued pursuant to Chapter 4740. of theRevised Code, who registers, pays the fee, obtains a bond, and submitsthe proof described under divisions (C)(1), (2), and (3) of thissection, as required, to engage in the type of contracting for which thelicense is held, within the municipal corporation." (Emphasis added).
 {¶ 21} Thus, pursuant to R.C. 715.27, as long as a state licensed electrical contractor meets the administrative and fee requirements delineated in R.C. 715.27, the municipality must allow that electrical contractor to work within the municipality. However, the Massillon Electrical Code imposes additional requirements that do not permit a state licensed electrical contractor who meets the requirements of R.C.715.27 to work in the City of Massillon.
 {¶ 22} The Massillon Electrical Code declares that "No electrical contractor shall permit or allow any person to engage in the installation, alteration, repair or addition to any electrical wiring within the corporate limits of the city pursuant to a permit granted to such electrical contractor unless such persons are licensed or registered electricians or apprentice electricians, as defined by this chapter, and are directly employed by the electrical contractor." Massillon Electrical Code 1313.03(c). The Massillon Electrical Code defines "directly employed" to mean that "the person to whom these terms apply is on the payroll of, and under the direct supervision and direction of, a person, firm, corporation or other entity that engages in the installation, repair, alteration or addition to any electrical wiring within the city or that is required to obtain a license or registration under this chapter. . . ." Massillon Electrical Code 1313.02(g).
 {¶ 23} Thus, if a state licensed electrical contractor uses employees who are not on that contractor's payroll, the State licensed electrical contractor cannot work in the City of Massillon. We find that the limitation of Massillon Electrical Code 1313.03(g) conflicts with R.C. 715.27. Revised Code 715.27 does not authorize a municipality to require that the workers used by the electrical contractor be directly employed, i.e., on the payroll of, that electrical contractor. Therefore, the City of Massillon exceeded its home rule authority when it enacted Massillon Electrical Code 1313.03(g) to the extent that that section requires licensed or registered electricians to be on the payroll of the electrical contractor.
 {¶ 24} Further, the Massillon Electrical Code attempts to expand the definition of "electrical contractor" from the definition provided in the Revised Code. The Massillon Electrical Code defines an electrical contractor as "any person, firm, corporation or other entity that engages in, or that directly employs another person(s) to engage in, or that supplies persons to any other person, firm, corporation or other entity who will engage in, the installation, alteration, repair of or addition to any electrical wiring within the corporate limits of the city under any contract, written or verbal, expressed or applied with the owner, lessee or contractor for any property or building." Massillon Electrical Code 1313.02(b). Thus, the City of Massillon seeks to classify an entity who "supplies persons to any other person, firm, corporation or other entity who will engage in, the installation, alteration, repair of or addition to any electrical wiring within the corporate limits of the city . . ." as an electrical contractor. Id. However, such entities are not defined as electrical contractors by the Revised Code. Revised Code4740.01(D) defines electrical contractors as follows: "any individual or business entity who satisfies both of the following: (1) For compensation, directs, supervises, or has responsibility for the means, method, and manner of electrical construction, improvement, renovation, repair, or maintenance on a construction project and who offers, identifies, advertises, or otherwise holds out or represents that the individual or business entity is permitted or qualified to direct, supervise, or have responsibility for the means, method, and manner of electrical construction, improvement, renovation, repair, or maintenance on a construction project;
 {¶ 25} "(2) Is a tradesperson or employs tradespersons who perform and who are trained to perform electrical construction, improvement, renovation, repair, or maintenance on a construction project."
 {¶ 26} The Revised Code provides for statewide licensing of electrical contractors and limits what a municipality may do in regard to electrical contractors, whether licensed or not. We find that the City of Massillon exceeded its home rule authority when it expanded the definition of electrical contractors, in section 1313.02(b) of the Massillon Electrical Code, to include entities that supply persons to an electrical contractor. We recognize that the City of Massillon and other political subdivisions throughout the State have legitimate concerns in protecting its citizenry from faulty workmanship and insuring accountability from those that perform that work. However, there are statutory limits to what a municipality may do to further those concerns. Beyond those limits, such concerns must be addressed by the State Legislature.
 {¶ 27} The City of Massillon asserts that Tradesmen does not have standing to argue issues that relate to limitations on licensed contractors who lease Tradesmen's employees. The City claims that only an entity that leases employees from Tradesmen can raise such issues. We disagree.
 {¶ 28} The Ohio Supreme Court has held that a party has standing to appeal if the party is aggrieved by the final order. Midwest FireworksManufacturing Company, Inc. v. Deerfield Township Board of ZoningAppeals (2001), 91 Ohio St.3d 174, 743 N.E.2d 894. The Court explained that an aggrieved party is one whose interest in the subject matter of the litigation is immediate, and pecuniary. Id. Stated otherwise, an appeal is permitted to correct errors which injuriously affect an appellant. Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm. (1942),140 Ohio St. 160, 42 N.E.2d 758, syllabus.
 {¶ 29} We find that Tradesmen was aggrieved by the final order of the trial court and that the errors Tradesmen seeks to correct injuriously affected Tradesmen, the appellant. The practical effect of the trial court's holding is to put Tradesmen out of business in Massillon, Ohio. No contractor doing business in the City of Massillon can lease workers from Tradesmen. Thus, Tradesmen has a present interest in the subject matter of this litigation and Tradesmen was aggrieved by the trial court's holding. In accord, City of Columbus v. TradesmenInternational, Inc. (1997), Franklin App. Nos. 96APC06-758, 96APC06-762., 1997 WL 52905. Therefore, we find that Tradesmen has standing to appeal and to present the issues considered sub judice.
 {¶ 30} Tradesmen also argues that the portion of the Massillon Electrical Code which imposes joint and several liability (1313.14(f)) conflicts with the general laws of Ohio, including the right to a jury trial as granted by Article I, Section V of the Ohio Constitution. Further, Tradesmen argues that the imposition of joint and several liability is arbitrary and thus unconstitutional. However, we find that we cannot address appellant's issues on their merits.
 {¶ 31} Appellant has sought a declaratory judgment and a permanent injunction. To maintain an action for declaratory judgment, three elements must be present: "(1) A real controversy between the parties; (2) which is justiciable in character; and (3) speedy relief is necessary to preserve the rights of the parties." Burger Brewing Co. v. LiquorControl Comm. (1973), 34 Ohio St.2d 93, 97, 296 N.E.2d 261. In order to obtain a permanent injunction, a party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists. DaytonMetro. Hous. V. Human Rel. Council (1992), 81 Ohio St.3d 1457,602 N.E.2d 253. We find that appellant's issue concerning the imposition of joint and several liability does not present a justiciable issue nor an issue from which appellant faces immediate and irreparable harm.
 {¶ 32} In Ohio, the need for a justiciable issue arises from the Ohio Constitution. Section 4(B), Article IV of the Ohio Constitution provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters . . . as may be provided by law." "For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties." Burger, 34 Ohio St.2d at 97-98. Generally, a claim is not ripe if the claim rests upon "future events that may not occur as anticipated, or may not occur at all." Texas v. United States (1998), 523 U.S. 296, 300,118 S.Ct. 1257, 1259, 140 L.Ed.2d 406, 410. A court is required to raise justiciability sua sponte. Stewart v. Stewart (1999), 134 Ohio App.3d 556,558, 731 N.E.2d 743.
 {¶ 33} The imposition of joint and several liability pursuant to the Massillon Electrical Code may or may not ever occur. At this point in time, appellant has not been sued nor has any entity sought to hold appellant jointly and severally liable for the work of an electrical contractor. Under these circumstances, we find that there is no justiciable issue before this court, including no immediate and irreparable harm faced by appellant.
 {¶ 34} Tradesmen's first assignment of error is sustained, in part and overruled, in part.
 II III {¶ 35} In the second assignment of error, Tradesmen argues that the trial court failed to recognize that the Massillon Electrical Code violates Tradesmen's substantive due process rights under the Ohio and United States Constitutions. In the third assignment of error, Tradesmen argues that the trial court failed to recognize the unconstitutionality of the Massillon Electrical Code based upon the City of Massillon's selective enforcement against Tradesmen and not against others who also supply tradespersons, namely the trade unions. Pursuant to our holding in assignment of error I, we find that assignments of error II and III are moot.
 {¶ 36} The judgment of the Stark County Court of Common Pleas for Stark County is hereby reversed and this matter is remanded for further proceedings consistent with this opinion.
By Edwards, J., Hoffman, P.J. and Farmer, J. concur.
In Re: City Ordinance — Constitutional.
[1] The term "specialty contractor," as used in R.C. 715.27, includes electrical contractors which are in turn defined as "any individual or business entity who satisfies both of the following:
"(1) For compensation, directs, supervises, or has responsibility for the means, method, and manner of electrical construction, improvement, renovation, repair, or maintenance on a construction project and who offers, identifies, advertises, or otherwise holds out or represents that the individual or business entity is permitted or qualified to direct, supervise, or have responsibility for the means, method, and manner of electrical construction, improvement, renovation, repair, or maintenance on a construction project;
"(2) Is a tradesperson or employs tradespersons who perform and who are trained to perform electrical construction, improvement, renovation, repair, or maintenance on a construction project." R.C. 4740.01(D), in pertinent part.